IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**MICHAEL DAVE HARBOUR**                                                     **PLAINTIFF**

**VERSUS**                                      **CIVIL ACTION NO. 2:13cv280-HSO-RHW**

**CLARKE COUNTY, MISSISSIPPI,** *et al.*                                  **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT BARRY WHITE'S [48] MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT is the Motion for Summary Judgment [48] seeking qualified immunity filed by Defendant Barry White. This Motion is fully briefed. Having considered the briefs, related pleadings, the record, and relevant legal authorities, the Court is of the opinion that the Motion for Summary Judgment [48] based upon qualified immunity should be granted, and that Plaintiff's remaining individual capacity claims against Defendant Barry White under 42 U.S.C. § 1983 should be dismissed with prejudice.

### I. BACKGROUND

Plaintiff Dave Harbour ("Mr. Harbour" or "Plaintiff") was previously married to Tina Harbour ("Ms. Harbour" or "Tina"). Dep. of Michael Dave Harbour [48-1] at 4. Two children were born of the marriage. *Id*. In an Order executed on February 21, 2012, the Chancery Court of Pike County, Mississippi (the "Chancery Court"), granted Ms. Harbour physical and legal custody of the children with Plaintiff having certain visitation rights. Order [51-1] at 1. With respect to Christmas, the Order

-1-

provided that Ms. Harbour "shall enjoy visitation during the even years, beginning 2012, and [Plaintiff] during the odd years, beginning 2013," and that "[t]he children shall be exchanged Noon Christmas Day in Collins, Mississippi, and returned at 6:00 PM in Collins, Mississippi, on the day before school begins." *Id.* at 2.

The Chancery Court subsequently entered a Temporary Order on August 9, 2012, which provided that, with respect to Plaintiff's weekend visitation with the children, Plaintiff "shall pick the children up from the home of Tina Harbour at 7:00 p.m. on Friday and Tina is to retrieve the children at 5:00 p.m. on Sunday from Dave Harbour's home or the home of his parents." Temp. Order [51-1] at 6. The Temporary Order stated that the "February 21, 2012 Order remains in effect as to child custody and visitation issues. However, the modifications herein shall remain in full force and effect until the trial of this matter set for September 4, 2012." *Id.* at 7.

According to Plaintiff's deposition testimony in this case, he was due for visitation with the children on Christmas Day, December 25, 2012, at noon. Dep. of Michael Dave Harbour [48-1] at 7-8, 15. That day, Plaintiff drove to Ms. Harbour's residence in Enterprise, Mississippi, to retrieve the children. *Id.* at 6, 15, 18-20. As he was driving, Plaintiff called to inform Ms. Harbour when he would arrive at her residence. *Id.* at 18-20. Ms. Harbour informed Plaintiff that the children did not want to go with him for visitation. *Id.* at 20. When Plaintiff arrived at Ms. Harbour's, he again called Ms. Harbour because she was not there. Ms. Harbour informed Plaintiff that she and the children were at her parents' house, and that the

children did not want to go with Plaintiff. *Id.* at 20-21. Plaintiff reminded Ms. Harbour of the Chancery Court Order. *Id.* Plaintiff waited an undisclosed amount of time and then made another call to Ms. Harbour. *Id.* at 21. Plaintiff testified that he and Ms. Harbour "had the same discussion again and at the end of it [Ms. Harbour] said fine, we're packing up the presents and I'm bringing them home." *Id.*

Instead of returning home, Ms. Harbour called Defendant Barry White ("Deputy White") of the Clarke County Sheriff's Department on his cell phone. Dep. of Barry White [48-3] at 9-10. Deputy White was at his home, but on duty with the Sheriff's Department. *Id.* Ms. Harbour informed Deputy White that Plaintiff "was at her house and [Plaintiff] would not leave." *Id.* According to Ms. Harbour, she informed Deputy White that her "children were not going with their father, Dave Harbour, for Christmas, that Dave was at [her] house threatening to go inside," and that she "wanted Dave to leave." Decl. of Tina Harbour [48-4] at 1.

Deputy White instructed Ms. Harbour to call 911 for dispatch, which she did. Dep. of Barry White [48-3] at 9-10, 26. The dispatcher testified that Ms. Harbour advised him that Plaintiff "was trespassing on her property." Dep. of Jonathan Ivey [48-5] at 7. According to Ms. Harbour, she informed the dispatcher that "Dave was at [her] house and threatened to go inside and gather [her] children's belongings." Decl. of Tina Harbour [48-4] at 1. Ms. Harbour requested that the "dispatcher . . . ask Dave to leave and let him know the children will not be going with him." *Id.*

The dispatcher notified Deputy White of the call at 12:53 p.m., and Deputy White departed his home. *Id.* at 8; Dep. of Barry White [48-3] at 10. On the way to

-3-

Ms. Harbour's residence, Deputy White called Ms. Harbour to gather more information. Dep. of Barry White [48-3] at 11. Ms. Harbour informed Deputy White that Plaintiff "was there to pick the kids up and they didn't want to go. They were at her parents. She didn't want [Plaintiff] there." *Id*. Deputy White was "generally aware" that there were ongoing disputes about visitation between Plaintiff and Ms. Harbour. *Id*. at 12.

"[N]o more than 15 or 20 minutes" after Plaintiff's last conversation with Ms. Harbour, Deputy White arrived at Ms. Harbour's residence. Dep. of Michael Dave Harbour [48-1] at 22. According to Plaintiff, he was in his vehicle in the parking area when Deputy White arrived. *Id*. Deputy White testified that as he approached Plaintiff's vehicle, Plaintiff's driver's side vehicle door was open, and Plaintiff was standing between the door and the car holding up his cell phone. Dep. of Barry White [48-3] at 21-22.

According to Plaintiff, Deputy White "told me that I had been told not to come back to Clarke County, that the kids didn't want to go." Dep. of Michael Dave Harbour [48-1] at 22-23. Deputy White testified that he "requested [Plaintiff] to leave several times and [Plaintiff] refused." Dep. of Barry White [48-3] at 23. According to Plaintiff, Deputy White "just told me to leave. [Deputy White] never told me that Tina wanted me off the property and Tina never told me that." Dep. of Michael Dave Harbour [48-1] at 33.

Plaintiff then told Deputy White, "I've got a court order," which he held in his hand. Dep. of Michael Dave Harbour [48-1] at 23. Deputy White purportedly

-4-

responded, "I'm not interested in it. We don't enforce Chancery Court orders. You've got to leave." *Id.* Plaintiff responded, "[n]o, I'm getting my children for Christmas. I've got a court order to be here." *Id.* Deputy White reportedly informed Plaintiff that he was going to arrest Plaintiff. *Id.* According to Plaintiff, Deputy White "didn't care" what the orders said. *Id.* at 24. Deputy White agreed that, even though Plaintiff "was arrogant that day" and "was very argumentative with law enforcement," all of Deputy White's discussions with Plaintiff were in an appropriate conversational tone as far as far as Deputy White could remember. Dep. of Barry White [48-3] at 31, 34.

After Plaintiff refused to leave the property, Deputy White instructed Plaintiff "to get out of the car and turn around and put [his] hands on the car." Dep. of Michael Dave Harbour [48-1] at 24. Plaintiff complied. *Id.* Deputy White "patted [Plaintiff] down and then told [him] to get in the back seat of his car," which Plaintiff did. *Id.* at 23-24. Deputy White arrested Plaintiff for trespassing, Dep. of Barry White [48-3] at 24-25, and transported Plaintiff to the Clarke County Jail, Dep. of Michael Dave Harbour [48-1] at 24, 27. On the way to the jail, Plaintiff informed Deputy White that he was "making a mistake" and that Plaintiff was "going to sue [him] if [he] did this." *Id.* at 24.

According to Deputy White, he "arrested Mr. Harbour because he refused to leave [Ms. Harbour's] property upon my request after several times asking him to do so." Dep. of Barry White [48-3] at 36. Deputy White maintains that Plaintiff's

refusal amounted to trespassing as well as disorderly conduct/failure to obey, which constituted probable cause to arrest Plaintiff. *Id.* at 13.

Plaintiff was released from custody the following morning. Dep. of Michael Dave Harbour [48-1] at 28. A deputy sheriff transported Plaintiff to Ms. Harbour's home to retrieve Plaintiff's vehicle. *Id.* Plaintiff "got the Christmas presents out of the car and put them under the shed in back and left." *Id.* The parties do not seem to dispute that the trespassing charge concluded with a termination in Plaintiff's favor. *See* Compl. [1] at 6.

B.  Procedural History

Plaintiff, who is an attorney representing himself in this case, filed his Complaint on December 23, 2013. *Id.* at 1. Plaintiff named as Defendants Clarke County, Mississippi; Clarke County Sheriff Todd Kemp ("Sheriff Kemp"), in his individual and official capacities; Deputy White, in his individual and official capacities; Deputy Shane Harper, in his individual and official capacities; and Ms. Harbour. *Id.*[1] The Complaint arguably advanced claims pursuant to 42 U.S.C. § 1983 for alleged violations of Plaintiff's rights under the Fourth, Eighth, and Fourteenth Amendments for false arrest, malicious prosecution, abuse of process, inadequate medical care, conditions of confinement, and intentional and/or negligent infliction of emotional distress, and pursuant to 42 U.S.C. § 1985 for conspiracy to interfere with Plaintiff's civil rights. *See id.* at 1, 7-11.

---

[1] Defendant Tina Harbour filed a Motion to Dismiss [22], which the Court granted by Order [32] entered on February 13, 2015. The Court dismissed Plaintiff's claims against Ms. Harbour without prejudice. Order [32] at 9.

Defendants Todd Kemp, Deputy White, and Shane Harper each filed individual Motions to Dismiss [5], [7], [9].  In an Order [31] entered on February 13, 2015, the Court granted Kemp's and Harper's Motions, and granted in part and denied in part Deputy White's Motion.  Order [31] at 17-18.  The Court dismissed all claims against Defendants Todd Kemp and Shane Harper in their individual capacities, and dismissed Plaintiff's individual capacity claims against Deputy White for malicious prosecution, abuse of process, inadequate medical care, conditions of confinement, and intentional and/or negligent infliction of emotional distress under 42 U.S.C. § 1983, and for conspiracy under 42 U.S.C. § 1985.  *Id.*  The Court held that "Plaintiff's 42 U.S.C. § 1983 claim for false arrest or imprisonment against Defendant Barry White in his individual capacity will proceed," without prejudice to Deputy White's right to re-urge qualified immunity.  *Id.* at 18.  Deputy White has now filed a Motion for Summary Judgment [48] asserting qualified immunity from liability from Plaintiff's remaining § 1983 claim against him.

## II. DISCUSSION

A.   Qualified Immunity and Summary Judgment

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *McClendon v. City of Columbia*, 305 F.3d 314, 322 (5th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "[T]he usual summary judgment burden of proof is altered in the case of a

qualified immunity defense." *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005) (citing *Bazan v. Hidalgo Cty.*, 246 F.3d 481, 489 (5th Cir. 2001)). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citing *Michalik*, 422 F.3d at 262).

Although all inferences are drawn in a plaintiff's favor, "[t]he plaintiff bears the burden of negating qualified immunity . . . ." *Id.* "[M]ere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment." *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). "The court has no duty to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). "Rather, the party opposing summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim." *Id.* (citing *Ragas*, 136 F.3d at 458).

A two-pronged inquiry informs the qualified immunity analysis. *Rockwell v. Brown*, 664 F.3d 985, 990-91 (5th Cir. 2011) (citation omitted). The first prong concerns "whether an official's conduct violated a constitutional right of the plaintiff" while the second asks "whether that right was clearly established at the time of the violation." *Id.* at 991 (citation omitted). "[A] court may conduct the two-pronged

qualified immunity inquiry . . . in any sequence." *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009).

"[B]ecause the test for immunity is solely one of objective reasonableness, any 'subjective intent, motive, or even outright animus [is] irrelevant in a determination of qualified immunity based on arguable probable cause to arrest, just as an officer's good intent is irrelevant when he contravenes settled law.'" *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 755 (5th Cir. 2001) (quoting *Mendenhall v. Riser*, 213 F.3d 226, 231 (5th Cir. 2000)). "Even if law enforcement officials erred in concluding that probable cause existed to arrest [the § 1983 plaintiff], they would be entitled to qualified immunity if their decision was reasonable, albeit mistaken." *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993). "[T]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Mangieri v. Clifton*, 29 F.3d 1012, 1017 (5th Cir. 1994) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

"An official's actions must be judged in light of the circumstances that confronted him, without the benefit of hindsight." *Callahan*, 623 F.3d at 253 (citation omitted). "In essence, a plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have believed his actions were proper." *Id.* (citation omitted). "Whether an official's conduct was objectively reasonable is a question of law for the court, not a matter of fact for the jury." *Id.*

B.     Legal Standard for False Arrest or Imprisonment Under § 1983

To prevail on a § 1983 claim for false arrest or imprisonment, Plaintiff must demonstrate that Deputy White lacked arguable probable cause to arrest him. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009) (citation omitted); *Haggerty v. Texas Southern Univ.*, 391 F.3d 653, 656 (5th Cir. 2004). "[E]ven law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Club Retro*, 568 F.3d at 206 (quotations omitted).

"The Supreme Court has defined probable cause as the facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* (quoting *Piazza v. Mayne*, 217 F.3d 239, 245-46 (5th Cir. 2000)). "The facts must be known to the officer at the time of the arrest; post-hoc justifications based on facts later learned cannot support an earlier arrest." *Id.* (citations omitted). "A showing of probable cause requires much less evidence than does a finding sufficient to convict." *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988) (citation omitted). "As applied to the qualified immunity inquiry, [Plaintiff] must show that [Deputy White] could not have reasonably believed that [he] had probable cause to arrest the plaintiff for any crime." *O'Dwyer v. Nelson*, 310 F. App'x 741, 745 (5th Cir. 2009) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)).

C.     Analysis

Deputy White contends that he had probable cause to arrest Plaintiff for the crimes of trespassing in violation of Mississippi Code § 97-17-87, and disorderly conduct/failure to obey in violation of Mississippi Code § 97-35-7.  Mem. in Supp. of Mot. for Summ. J. [49] at 10-11.  Plaintiff maintains that Deputy White lacked probable cause to arrest him on either charge.  Mem. in Supp. of Pl.'s Resp. [52] at 9-12.

1.     Trespass

Mississippi Code § 97-17-87 provides in relevant part that:

> Any person who shall be guilty of a willful or malicious trespass upon the real or personal property of another, for which no other penalty is prescribed, shall, upon conviction, be fined not exceeding Five Hundred Dollars ($500.00), or imprisoned not longer than six (6) months in the county jail, or both.

Miss. Code Ann. § 97-17-87(1).  "The elements of trespass include wilfully and maliciously entering another's property without permission or remaining on his or her property after being told to leave." *Hill v. State*, 929 So. 2d 338, 341 (Miss. Ct. App. 2005) (citing Miss. Code §§ 97-17-85, -87, -93, -97).

Based upon the record before the Court, Plaintiff has not met his burden of negating Deputy White's qualified immunity.  The undisputed summary judgment evidence reflects that Ms. Harbour informed Deputy White that Plaintiff "was at her house and [Plaintiff] would not leave."  Dep. of Barry White [48-3] at 9-10.  Ms. Harbour also informed the police dispatcher that Plaintiff "was trespassing on her property."  Dep. of Jonathan Ivey [48-5] at 7.  The dispatcher then directed Deputy

White to the scene. When Deputy White arrived, he instructed Plaintiff to leave, but Plaintiff refused to do so. Michael Dave Harbour [48-1] at 33; Dep. of Barry White [48-3] at 23. This is sufficient to support a reasonable belief that Plaintiff was trespassing.

Plaintiff maintains that Deputy White was objectively unreasonable for failing to read the Chancery Court Orders that he had in his hand when he was arrested. Plaintiff argues that an objectively reasonable officer would know that he could not force Plaintiff to leave Ms. Harbour's residence when a Chancery Court Order authorized Plaintiff to be on the premises "[a]bsent exigent circumstances . . . ." Mem. in Supp. of Pl.'s Resp. [52] at 10. According to Plaintiff, "Deputy White admitted in his deposition that he knows that he could not tell someone to stay off such premises when a Court Order authorizes a citizen to be there." *Id.* (citing Dep. of Barry White [48-3] at 28).

However, Plaintiff's characterization of Deputy White's deposition is somewhat at odds with the actual testimony on the subject. Deputy White testified in relevant part as follows:

> Q. Well, you realize that a law enforcement officer can't tell somebody to stay away from a place that a court order has ordered him to be, don't you?
> A. Yes.

> Q. You realize Shane Harper[2] couldn't tell me to stay away from her house, don't you, lawfully?
> A. If there is a problem -- a continuing problem we tell people to stay away and find a different location to do child swap. Do it in a public place normally where there's a camera like a convenience store with cameras. Do it in front of a camera. That way it wouldn't be any question of what happened if there was a problem.
> Q. Between Shane Harper and the Chancery Court, who has the authority?
> A. Do what, now?
> Q. Who has the final say, Shane Harper or a Chancery judge?
> [Objection by Defense counsel.]
> A. If we have a child custody situation and a problem arises where we have to keep the peace, we'll do what we have to to keep the peace on that particular day. I mean, if it's to tell somebody to leave we'll do that. If they refuse to leave, that normally ends them up and lands them in jail. I personally have told people if you can't swap at each other's residence you go to a public place. Do it in front of a camera. I tell people to go to the Sepco in Stonewall all the time because they've got a darn good camera system inside and out. If there is a problem there won' t be any question of who hit who or whatever.
> BY MR. HARBOUR:
> Q. So under what circumstances can a law enforcement officer such as yourself tell somebody to do something different than what a Chancery judge has already told them to do?
> A. Well, if I'm on that call and I'm trying to keep the peace, you know, it's up to me to keep the peace and I'll do what I have to to keep it. And I'm hoping that these two grown individuals can go to Chancery Court and work it out amongst themselves in court with the Chancery judge and leave me out of it, but at times people don't do that and I have to do my job.
> \* \* \*

---

[2] Plaintiff testified that he had a separate incident in September 2012 with Deputy Shane Harper, which did not involve Deputy White. Dep. of Michael Dave Harper [48-1] at 13. Plaintiff's questioning during Deputy White's deposition indicated that Deputy Harper had previously told Plaintiff to "stay away from Tina's residence . . . ." Dep. of Barry White [48-3] at 9 (question posed to Deputy White by *pro se* Plaintiff). Plaintiff asked Deputy White if Deputy Harper had informed Deputy White that Harper had told Plaintiff "to stay away from [Ms. Harbor's] house," and Deputy White responded, "I don't remember that." *Id.* at 27.

Q.     Request Number 19 in the request for admissions to you requested you to admit that there were Chancery court orders for me to be there for visitation and you denied it. Did you not know when you answered these requests for admissions on March 26, more or less, 2015 that there were Chancery court orders for me to get the children for visitation on Christmas day?
A.     I haven't seen a court order.
MR. ALLEN:     Dave, would you read the whole response because he actually said he lacks knowledge sufficient, not just a straight denial.
A.     I haven't seen a court order. And when I say court order, if I do something in Chancery Court the Chancery judges, Primo and Mason, is [sic] going to send me one stating you take these two children and you give to this parent. It's going to come from our Chancery clerk's office with the seal on it. Okay. When people tell me they have an order, that's an order for you and your ex-wife to do what's right in y'all's agreement. Okay. That's not telling me I can snatch kids from one parent and give to another. I'm not going to do it. We don't do that at the sheriff's office. If I get an order from any Chancery judge it's going to come through our clerk with their seal and they'll hand deliver it to our secretary and she will stamp it and log it down and give it to a deputy to serve. That's how it works.
Q.     Just to be clear, Judge Primo and Mason are the Chancery judges for this --
A.     I was giving them as an example, yes. I'll say any Chancery judge.
Q.     You realize that there are Chancery judges from counties other than Clarke County?
A.     That's correct. That's why I said any Chancery judge that gives an order, they'll send it to our Chancery clerk. She'll stamp it. She'll send it to us. Ms. Sherry will stamp it and log it in and then it will be served.
Q.     Nobody asked you to take kids from one parent and give to the other that day, did they? You already told me everything you remember about your discussion.
A.     Well, when I told you that they weren't going and you said you were going to get them anyway, I told you I can't do that. I told you that day I couldn't give from one parent -- take from one parent and give to another.
Q.     What was the breach of the peace that happened that day, Officer White?

-14-

>    A.   You would not leave the property. You were very argumentative with law enforcement.

Dep. of Barry White [48-3] at 28-30, 32-34.

Deputy White essentially testified that he was charged with keeping the peace, which he felt was required on the day in question. *See id.* Deputy White also explained the procedure that is utilized when he and other officers are tasked with enforcing a Chancery Court Order. *See id.* Based on the foregoing undisputed testimony, the Court cannot conclude that it was objectively unreasonable for Deputy White to decline or refuse to review the Chancery Court Orders proffered by Plaintiff under the circumstances Deputy White faced that day.[3]

Because the record supports the conclusion that Deputy White held an objectively reasonable belief that probable cause existed to arrest Plaintiff for

---

[3] To the extent Plaintiff may be relying upon the substance of the Chancery Court Orders in an attempt to defeat Deputy White's qualified immunity, this argument is unavailing. According to Plaintiff, those Orders authorized him "to be on Ms. Harbour's property at that very date, time and place," thereby negating any finding of probable cause on the trespass charge. Mem. in Supp. of Pl.'s Resp. [52] at 10. Plaintiff has submitted the Orders as an exhibit [51-1] to his Response.
    The Court does not read the Chancery Court Orders as authorizing Plaintiff to be on Ms. Harbour's property on December 25, 2012, as Plaintiff suggests. The first Order granted Plaintiff Christmas visitation "during the odd years, beginning 2013," and provided that "[t]he children shall be exchanged Noon Christmas Day in Collins, Mississippi, and returned at 6:00 PM in Collins, Mississippi, on the day before school begins." Order [51-1] at 2. Ms. Harbour's residence was in Enterprise, Mississippi. This Order does not contemplate exchanging the children at Ms. Harbour's residence. *See id.*
    The second, Temporary Order provided that Plaintiff "shall pick the children up from the home of Tina Harbour at 7:00 p.m. on Friday and Tina is to retrieve the children at 5:00 p.m. on Sunday from Dave Harbour's home or the home of his parents." Temp. Order [51-1] at 6. The plain language of this provision appears to apply only to Plaintiff's regular weekend visitation, not Christmas. *See id.* Moreover, the Temporary Order provided that "the modifications herein shall remain in full force and effect until the trial of this matter set for September 4, 2012 . . . ." *Id.* at 7. The incident in this case occurred on December 25, 2012, after the expiration date contained in the Temporary Order.

criminal trespass, Deputy White is entitled to qualified immunity as to Plaintiff's § 1983 claim for false arrest or imprisonment. While the trespassing charge was ultimately resolved in Plaintiff's favor, this is not dispositive. The Court cannot conclude that a reasonable officer could not have believed that there was probable cause to arrest Plaintiff for criminal trespassing.

    2.    <u>Disorderly Conduct/Failure to Obey</u>

Even if Plaintiff could carry his burden of negating Deputy White's qualified immunity as to the criminal trespassing charge, Plaintiff has not done so as to the alleged disorderly conduct/failure to obey violation. Mississippi Code § 97-35-7 provides in relevant part that:

> Whoever, with intent to provoke a breach of the peace, or under such circumstances as may lead to a breach of the peace, or which may cause or occasion a breach of the peace, fails or refuses to promptly comply with or obey a request, command, or order of a law enforcement officer, having the authority to then and there arrest any person for a violation of the law, to:
>
>     \* \* \*
>
> (i)    Act or do or refrain from acting or doing as ordered, requested or commanded by said officer to avoid any breach of the peace at or near the place of issuance of such order, request or command, shall be guilty of disorderly conduct, which is made a misdemeanor and, upon conviction thereof, such person or persons shall be punished by a fine of not more than Five Hundred Dollars ($500.00) or imprisonment in the county jail for not more than six (6) months, or by both such fine and imprisonment.

Miss. Code Ann. § 97-35-7(1)(i).[4]

---

[4] The parties have not cited a specific subsection of this statute in their briefing. However, it appears from their arguments that they are referencing section 97-35-7(1)(i).

A review of Mississippi case law interpreting this statute is instructive. In *Matthews v. City of Madison*, Matthews was convicted of simple assault and disorderly conduct in Madison County Municipal Court based upon a domestic violence incident between Matthews and the maternal grandmother of Matthews' child during a custody exchange at the grandmother's home. *Matthews v. City of Madison*, 143 So. 3d 579, 581 (Miss. Ct. App. 2013). When police arrived at the home, officers approached the grandmother to begin their investigation, at which point Matthews approached the officers. *Id.* at 582. An officer ordered Matthews to return to his vehicle. *Id.* As he returned to his vehicle, Matthews began making a call on his cell phone. *Id.* The officer ordered Matthews to not use his phone, and Matthews responded that the officer "could not prevent him from using his phone." *Id.* Because Matthews refused to stop using the cell phone, the officer arrested Matthews for disorderly conduct. *Id.* Matthews was subsequently convicted of simple assault and of disorderly conduct for refusing to comply with a police officer's request under Mississippi Code § 97-35-7(1)(i). Matthews appealed, arguing in relevant part that there was insufficient evidence of disorderly conduct. *Id.*

The Mississippi Court of Appeals addressed the sufficiency of the evidence to support a disorderly conduct conviction under section 97-37-7(1)(i). The Court evaluated the evidence as follows:

> [The officer] began his investigation by interviewing [the grandmother].
> As Matthews approached, [the officer] instructed him to return to his
> car and to refrain from using his cell phone. Although Matthews began
> to return to his car, Matthews testified that he refused to refrain from
> using his cell phone. When he failed to comply with [the officer's] order,

-17-

he was arrested. From the evidence presented, a reasonable finder of fact could have found beyond a reasonable doubt that Matthews was guilty of disorderly conduct. This issue is without merit.

*Matthews*, 143 So. 2d at 584-85.

The undisputed evidence in this case reveals that Ms. Harbour informed Deputy White and the dispatcher that Ms. Harbour did not want Plaintiff on her property and that Plaintiff was threatening to enter her house. Decl. of Tina Harbour [48-4] at 1. Deputy White instructed Plaintiff to leave Ms. Harbour's property, and Plaintiff refused to obey Deputy White's request. Dep. of Michael Dave Harbour [48-1] at 33; Dep. of Barry White [48-3] at 23. Based upon this evidence, an objectively reasonable officer could have believed at the time that Plaintiff had threatened to go inside Ms. Harbour's residence without Ms. Harbour's permission, and that Plaintiff refused to comply with Deputy White's requests to leave Ms. Harbour's property. This record supports an objectively reasonable belief that probable cause existed to arrest Plaintiff for violation of Mississippi Code § 97-35-7(1)(i).

The fact that Plaintiff was not formally charged with the crime of disorderly conduct/failure to obey is irrelevant to the qualified immunity analysis. *Club Retro*, 568 F.3d at 204. The Court must "find probable cause existed if the officer was aware of facts justifying a reasonable belief that an offense was being committed, whether or not the officer charged the arrestee with the specific offense." *Id.* (citing *Devenpeck v. Alford*, 543 U.S. 146, 153-54 (2004)). Deputy White was aware of facts supporting a reasonable belief that Plaintiff was violating Mississippi Code § 97-35-

7(1)(i) at the time of Plaintiff's arrest. *See id*. For this reason as well, Deputy White is entitled to qualified immunity on Plaintiff's § 1983 claim for false arrest or imprisonment.

### III. CONCLUSION

The Court concludes that Deputy White's Motion for Summary Judgment based on qualified immunity should be granted, and Plaintiff's remaining individual capacity claims under 42 U.S.C. § 1983 against Deputy White should be dismissed with prejudice.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion for Summary Judgment [48] based on qualified immunity filed by Defendant Barry White is **GRANTED**, and Plaintiff's individual capacity claims under 42 U.S.C. § 1983 against Defendant Barry White are **DISMISSED WITH PREJUDICE**. Plaintiff's official capacity claims under 42 U.S.C. § 1983 against Defendants Clarke County, Mississippi; Clarke County Sheriff Todd Kemp; Deputy Barry White; and Deputy Shane Harper shall proceed.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the stay of these proceedings is lifted, and that the parties shall contact the Magistrate Judge within ten (10) calendar days to schedule a Case Management Conference.

**SO ORDERED AND ADJUDGED**, this the 25th day of November, 2015.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE